**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Matthew T. Theriault (SBN 244037)
mtheriault@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff Connor Hauer
and the Putative Plaintiff Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNOR HAUER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NV NUTRITION, LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, et. seq.<br><br>2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS & PROFESSIONS CODE § 17500, et. seq.<br><br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE § 17200, et. seq.<br><br>4. BREACH OF EXPRESS WARRANTY.<br><br>5. UNJUST ENRICHMENT<br><br>DEMAND FOR JURY TRIAL |

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Plaintiff Connor Hauer ("Mr. Hauer" or "Plaintiff"), individually and on behalf of all other similarly situated purchasers (the "Class") of Nutriair™ vaping pens (the "Product(s)"), brings this class action against NV Nutrition, LLC, ("Nutriair" or "Defendant") and Does 1 through 10 inclusive (collectively referred to herein as "Defendants") and alleges as follows:

## SUMMARY OF THE ACTION

1.    Nutriair™ vaping pens are labeled and advertised as "safe" and "nutritional" when in fact they put consumers at risk of lung disease and a plethora of other horrific illnesses. The Product is unsafe and causes harmful side effects, many of which are worse than those caused by smoking cigarettes.

2.    Nutriair misleads reasonable consumers to believe its Product is safe, and it fails to disclose material information to consumers, putting consumers at risk of serious medical harm. *See* screenshot from Defendant's official website, *infra*.



## HARMFUL EFFECTS OF VAPING

3.    The scientific community has tested, proved, and concluded the harmful effects of vaping. These include, but are not limited to, airway obstruction, lung

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

inflammation, suppression of immune-related genes, endothelial impairment, cell rigidity, respiratory diseases, autoimmune disorders, and further inflammation.

## I.    Vaping is Harmful on Human Airways

4.    The American Journal of Respiratory and Critical Care Medicine  tested the effect of vaping on lower airways and examined the effect of propylene glycol and vegetable glycerin ("PG/VG"), standard ingredients in vaping pens like the Product, exposure on protein expression.[1] It found that PG/VG increased plasma membrane rigidity, inhibiting cell movement and functionality.[2] It also found that, like tobacco exposure, PG/VG exposure leads to higher levels of the MUC5AC protein in human airways, which is the breeding ground for airway diseases.[3] Such high levels of these proteins are indicative of airway obstruction.[4] PG/VG is therefore harmful to those who inhale it, by both allowing diseases to prevail and by obstructing the airways.

5.    A study published by the American Journal of Respiratory and Critical Care Medicine further examined the effects of vaping on the airways.[5] By showing that the same markers appeared in the sputum (mucus of lower airways) of vaporizer and cigarette users, the study revealed that the effect of both acts on airway physiology.[6] Because the markers found are associated with lung inflammation, it

[1] Ghosh, Arunava et al. (2018). *Chronic E-Cigarette Exposure Alters The Human Bronchial Epithelial Proteome*. American Journal Of Respiratory And Critical Care Medicine, vol 198, no. 1, pp. 67-76. American Thoracic Society, doi:10.1164/rccm.201710-2033oc.
[2] *Id.*
[3] *Id.*
[4] Innes, Anh L. et al. (2006). *Epithelial Mucin Stores Are Increased In The Large Airways Of Smokers With Airflow Obstruction.* Chest, vol 130, no. 4, pp. 1102-1108. Elsevier *BV*, doi:10.1378/chest.130.4.1102.
[5] Reidel, Boris et al. (2018). *E-Cigarette Use Causes A Unique Innate Immune Response In The Lung, Involving Increased Neutrophilic Activation And Altered Mucin Secretion.* American Journal Of Respiratory And Critical Care Medicine, vol 197, no. 4, pp. 492-501. American Thoracic Society, doi:10.1164/rccm.201708-1590oc.
[6] *Id.*

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

shows that the impact is equally problematic. It explained this similarity by showing how vaporizers activate neutrophils (immune cells that contribute to inflammatory lung disease) to worrisome levels.[7] It concluded that vaping is not safe.

## II.    Vaping's Immunosuppressive Effects Are Worse Than Those Caused by Cigarettes

6.    The American Journal of Physiology published a study comparing gene expression of cigarette smokers, non-smokers, and vaping, with a focus on genes with known immune functions found in the respiratory mucosa.[8] It found that both smoking and vaping had immunosuppressive effects.[9] All genes suppressed by smoking cigarettes were also suppressed by vaping. The extent of the suppression seen, however, was different: vaping is associated with many more gene expression changes and greater suppression than smoking. In fact, of the 563 genes tested, 305 were uniquely downregulated by vaporizers.[10] The study further emphasizes the caused downregulation of genes related to the chemokine CSF-1, which is key in innate immunity against fungal, bacterial, and viral infections. <u>The study concluded that in terms of gene suppression, vaping is not only as bad, but is even worse than smoking cigarettes</u>. These findings directly contradict the labeling and advertising of the Products as "safe."

## III.    Vaping Decreases the Functionality of Immune Cells

7.    The effect of vaping on human immunology is examined by evaluating the effects of vaping on immune cells. The American Journal of Physiology published a study of the effects of seven flavored nicotine-free e-liquids on three

---

[7] *Id.*

[8] Martin, Elizabeth M. et al. (2016). *E-Cigarette Use Results In Suppression Of Immune And Inflammatory-Response Genes In Nasal Epithelial Cells Similar To Cigarette Smoke*. American Journal Of Physiology-Lung Cellular And Molecular Physiology, vol 311, no. 1, pp. L135-L144. American Physiological Society, doi:10.1152/ajplung.00170.2016.

[9] *Id.*

[10] *Id.*

different respiratory immune cells: alveolar macrophages, neutrophils, and natural killer cells.[11] All seven saw a dose-dependent decrease in functionality of these cells, thus leaving the body exposed to respiratory diseases, autoimmune disorders, and inflammation that these cells would otherwise thwart.[12] The study shows how particular components in the flavorings, like cinnamaldehyde and vanillin, are very harmful.[13]

8.    The Flavor and Extra Manufacturers Association (FEMA) calls attention to the potentially hazardous exposure of heated flavors. Heating flavorings, as done through aerosolization, "will increase volatility and greatly increase air concentrations of flavoring substances."[14]

## IV.    Vaping Impairs Endothelial Functions

9.    In August 2019, the Radiology journal published a study testing the effects of inhaling nicotine-free electronic cigarette aerosol on the endothelial functions, particularly blood vessels.[15] The study reported three main findings. First, the reduction of both "femoral artery flow-mediated dilation and reactive hyperemia acceleration". [16] This means that the artery's ability to change its diameter depending on blood flow was restricted. Second, inhalation of this aerosol was associated with a decrease in hemoglobin saturation in the superficial femoral vein, suggesting

---

[11] Clapp, P.W. et al. *Flavored E-Cigarette Liquids And Cinnamaldehyde Impair Respiratory Innate Immune Cell Function*. American Journal Of Physiology-Lung Cellular And Molecular Physiology, vol 313, no. 2, 2017, pp. L278-L292. American Physiological Society, doi:10.1152/ajplung.00452.2016.

[12] *Id.*

[13] *Id.*

[14] The Flavor and Extract Manufacturers Association of The United States (2012). *Respiratory Health And Safety In The Flavor Manufacturing Workplace: 2012 Update*. FEMA, Washington, 2012, p. 8.

[15] Caporale, A., Langham, M., Guo, W., Johncola, A., Chatterjee, S., & Wehrli, F. (2019). *Acute Effects of Electronic Cigarette Aerosol Inhalation on Vascular Function Detected at Quantitative MRI*. Radiology, 190562. doi: 10.1148/radiol.2019190562

[16] *Id.*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

microvascular dysfunctions. And third, the inhalation of the aerosol was associated with an increase in aortic pulse wave velocity therefore "suggesting acute aortic stiffness." [17] Thus, vaping affected blood vessels both at the microvascular and macrovascular scales, mostly by impairing bodily functions.

10.    Previous studies have also looked at the effects of vaping on epithelial function. For example, a study published by the journal Atherosclerosis measured endothelial progenitor cells (EPCs) and microvesicles (MVs) to evaluate vascular changes due to short-term exposure to e-cigarette vapor. The study found that vaping rapidly increased the number of EPCs in blood and no alteration of circulating MVs, which may have "an impact on vascular integrity leading to future atherosclerosis."[18] Atherosclerosis is a disease consisting of the buildup of plaque inside arteries that limits the oxygen-rich blood from reaching parts of the body, and that can lead to heart attack and stroke.[19]

## VAPING IN THE NEWS

11.    According to the Food and Drug Administration ("FDA"), the use of e-cigarettes from 2017 to 2018 increased 78% among high school students and 48% among middle school students.[20]

12.    News reports regarding vaping-related lung illnesses have emerged in 14 states.[21] As of August 23, 2019, there are 193 cases of severe lung illness related to

[17] *Id.*

[18] Antoniewicz, L., Bosson, J., Kuhl, J., Abdel-Halim, S., Kiessling, A., Mobarrez, F., & Lundbäck, M. (2016). *Electronic cigarettes increase endothelial progenitor cells in the blood of healthy volunteers*. Atherosclerosis, *255*, 179-185. doi: 10.1016/j.atherosclerosis.2016.09.064

[19] National Heart, Lung, and Blood Institute. (2019). Atherosclerosis. https://www.nhlbi.nih.gov/health-topics/atherosclerosis (Accessed 5 November 2019).

[20] *See FDA website* https://www.fda.gov/tobacco-products/youth-and-tobacco/2018-nyts-data-startling-rise-youth-e-cigarette-use (Accessed 5 November 2019).

[21] Sun, L., & Bever, L. (2019). *Vaping-related lung illnesses under investigation in 14 states.* The Washington Post.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLASS ACTION COMPLAINT

vaping.[22] Patients involved share similar symptoms, including difficulty breathing, shortness of breath, chest pain, fever, coughing, vomiting, and diarrhea. Many have even been hospitalized and some even placed in ventilators in intensive care units.[23]

13.    Reports of individual cases are equally problematic. In Florida, an 18-year-old student's lung collapsed, which is "virtually unheard of" for such a young age.[24]  By reporting the first death related vaping, the US Center for Disease Control and Prevention ("CDC") warns the public about the harmful effects and dangers of vaping.[25]

14.    The scientific community quickly attributed this "cluster of pulmonary illness" to the single common factor, vaping.[26] In fact, since 2009, the FDA has received 127 reports of seizures and other neurological symptoms linked to vaping.[27]

///

///

///

_____

https://beta.washingtonpost.com/health/2019/08/16/mystery-lung-illness-linked-vaping-health-officials-investigating-nearly-possible-cases/?outputType=amp (Accessed 5 November 2019).

[22] Lavietes, M. (2019). *CDC flags one death and nearly 200 cases of lung illnesses in U.S.* Thomson Reuters. https://www.reuters.com/article/us-health-vaping-illinois-idUSKCN1VD22Y (Accessed 5 November 2019).

[23] *Id.*

[24] Juntti, M. (2019). *Scientific Dangers of Vaping Are Only Now Beginning to Be Understood.* https://www.fatherly.com/health-science/scientific-dangers-of-vaping/amp/ (Accessed 5 November 2019).

[25] Centers for Disease Control and Prevention. (2019). *CDC Director's Statement on the first death related to the outbreak of severe lung disease in people who use e-cigarette or "vaping" devices.* https://www.cdc.gov/media/releases/2019/s0823-vaping-related-death.html (Accessed 5 November 2019).

[26] National Public Radio. (2019). *What's Behind A Cluster Of Vaping-Related Hospitalizations?.* https://www.npr.org/sections/health-shots/2019/08/16/751823475/whats-behind-a-cluster-of-vaping-related-hospitalizations (Accessed 5 November 2019).

[27] Juntti, M. (2019). *Scientific Dangers of Vaping Are Only Now Beginning to Be Understood.* Fatherly. https://www.fatherly.com/health-science/scientific-dangers-of-vaping/amp/ (Accessed 5 November 2019).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLASS ACTION COMPLAINT

15.     Pulmonary critical care specialists have explained that this vapor is not "harmless water vapor", but "serious chemicals that are lung toxic." [28,29] Regardless of the presence of THC or nicotine, this phenomenon is an "inhalation problem" due to patients' deteriorating lungs and increasing inflammation. Vaping, vapor, and aerosol itself is therefore a big part of the problem. [30]

## DEFENDANT'S FALSE, DECEPTIVE, AND MISLEADING ADVERTISING CLAIMS

16.     According to the US Food & Drug Administration, a vaping pen or vaporizer is a device that turns a liquid into aerosol for inhalation, regardless of whether this liquid, known as "e-liquid," has nicotine or not.[31] The process of inhaling this liquid is known as "vaping." Although commonly called "vapor," the technical, scientific name of the heated liquid is actually aerosol, since it is created via aerosolization.[32] The Products sold by Nutriair heats the "signature liquid nutrient blend which turns to vapor" through "micro-aerosolization" for the user to inhale. The Products are therefore vaping devices or vaporizers.

17.     The term "vaping" carries a negative connotation given its harmful effects and similarities to cigarettes. Defendant refuses to use the word "vaping" on its official website or packaging to mislead consumers into thinking that using the Product is not vaping. Tellingly, however, Nutriair LLC used to be called Nutrovape

[28] Edwards, E. (2019) *Cases Of Vaping-Linked Breathing Problems Now Reported In 8 States, Mostly In The Midwest.* NBC News. https://www.nbcnews.com/health/health-news/cases-vaping-linked-breathing-problems-now-reported-8-states-n1042796. (Accessed 5 November 2019).
[29] *Id.*
[30] *Id.*
[31] *See FDA website* https://www.fda.gov/tobacco-products/products-ingredients-components/vaporizers-e-cigarettes-and-other-electronic-nicotine-delivery-systems-ends.
[32] Marcellin, L. (2019). *E-Cigarettes, Vaping, and the FDA's Dilemma.* Elsevier. https://www.elsevier.com/__data/assets/pdf_file/0007/866635/E-Cigarettes-Vaping-Physician-Focus-042419.pdf (Accessed 5 November 2019).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    LLC ("Nutrovape").[33]In fact, the Nutrovape website is still active and reveals that

2    Nutriair clearly acknowledges its Products as vaporizers by claiming that Nutrovape,

3    which sells identical products, "[i]s a vapor inhalation product that delivers

4    nutritional supplements into the lungs." Given the similarities, Nutriair and

5    Nutrovape are the same. *See* screenshots *infra* taken from both Nutriair's and

6    Nutrovape's official websites.





28    [33] Nutriair (2019) *Nutriair: About.* Linkedin.
https://www.linkedin.com/company/nutriair/about/ (Accessed 5 November 2019).

9

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

18.    In furtherance of its deceptive and misleading advertising that the Products are "nutritional" and "safe," Nutriair sells varieties of the Product and labels them as follows: *Energy*, *Sleep, Diet, Focus, Recover, Relax, Performax, Immune, B-Complex, Peppermint Breeze,* and *Sweet Melon*. Nutriair claims that *Energy*, for example, will keep consumers active and awake, that *Sleep* will help the consumer fall asleep, and that *Focus* "improves cognitive function."[34] Nutriair misleads reasonable consumers to believe that its Products provide a positive nutritional and health benefit without any negative effects—this is false and deceptive.

19.    The Products contain propylene glycol and vegetable glycerin ("PG/VG"), and "Natural and Artificial Flavorings."

20.    Defendant deceptively advertise its Products as "safe" and "nutritional" despite the fact that: (a) PG/VG inhibit cell function and can cause airway obstruction,[35,36]  (b) vaping has been proven by the scientific community to be extremely harmful (*see supra*) and similar to the negative effects of cigarettes,[37, 38]

---

[34] *See Nutriair website*
https://nutriair.com/products/focus (Accessed 5 November 2019).
[35] Doi, A., Roycroft, J., Herbert, R., Haseman, J., Hailey, J., & Chou, B. et al. (2004*). Inhalation toxicology and carcinogenesis studies of propylene glycol mono-t-butyl ether in rats and mice*. Toxicology, *199*(1), 1-22. doi: 10.1016/j.tox.2003.12.020
[36] Ghosh, A. et al. (2018). *Chronic E-Cigarette Exposure Alters The Human Bronchial Epithelial Proteome.* American Journal Of Respiratory And Critical Care Medicine, vol 198, no. 1, 2018, pp. 67-76. American Thoracic Society, doi:10.1164/rccm.201710-2033oc.
[37] Martin, E. et al. (2016). *E-Cigarette Use Results In Suppression Of Immune And Inflammatory-Response Genes In Nasal Epithelial Cells Similar To Cigarette Smoke.* American Journal Of Physiology-Lung Cellular And Molecular Physiology, vol 311, no. 1, pp. L135-L144. American Physiological Society, doi:10.1152/ajplung.00170.2016.
[38] Reidel, B. et al. (2018). *E-Cigarette Use Causes A Unique Innate Immune Response In The Lung, Involving Increased Neutrophilic Activation And Altered Mucin Secretion*. American Journal Of Respiratory And Critical Care Medicine, vol 197, no. 4, pp. 492-501. American Thoracic Society, doi:10.1164/rccm.201708-1590oc.

CLASS ACTION COMPLAINT

and (c) "Natural and Artificial Flavorings" in the Products can have toxic components which Defendant fails to disclose to consumers.[39]

    a. **PG/VG**:  Defendant's official website states "Propylene Glycol (PG) is used in day to day food and other items for over the last 50 years, and it is generally recognized as safe ("GRAS") by the FDA. The amount of PG in edible items is so little that there are absolutely no harmful effects even if you consume it for long periods."[40] The website omits material information that *inhalation* of PG is different than its oral consumption. In fact, scientific studies have shown that whole-body prolonged inhalation of propylene glycol (PG) mono-t-butyl ether on mice can cause renal and liver toxicity in mice, resulting in cancer. [41]

    b. **Vaping and Cigarettes**: Nutriair attempts to differentiate its Products from cigarettes, e-cigarettes, and other vaporizers by claiming they are "safe nutritional supplements." In fact, Nutriair claims that "ensuring the safety of our products — and maintaining the confidence of consumers — is the single most important goal of our industry" and that "Product safety is the foundation of consumer trust, and our industry devotes enormous resources to ensure that our products are safe."[42]  Despite Nutriair's "goal", its Products share the same, if not more, harmful side effects as cigarettes, e-cigarettes, and other vaping devices.

---

[39] Clapp, P.W. et al. (2017). *Flavored E-Cigarette Liquids And Cinnamaldehyde Impair Respiratory Innate Immune Cell Function.* American Journal Of Physiology-Lung Cellular And Molecular Physiology, vol 313, no. 2, pp. L278-L292. American Physiological Society, doi:10.1152/ajplung.00452.2016.

[40] *See Nutriair website*, https://nutriair.com/pages/faq (Accessed 5 November 2019).

[41] Doi, A.M. et al. (2004). *Inhalation Toxicology And Carcinogenesis Studies Of Propylene Glycol Mono-T-Butyl Ether In Rats And Mice.* Toxicology, vol 199, no. 1, pp. 1-22. Elsevier *BV*, doi:10.1016/j.tox.2003.12.020.

[42] *See Nutriair website,* https://nutriair.com/pages/consumer-safety. (Accessed 5 November 2019).

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLASS ACTION COMPLAINT

c.  **Natural and Artificial Flavorings**: Nutriair advertises that the components that make up the flavors in its Products are GRAS for oral consumption by the FDA. There is nothing that states that such flavors are safe when *inhaled*. In fact, the Flavor and Extra Manufacturers Association (FEMA) calls attention to the potentially hazardous exposure of heated flavors. Heating flavorings, as done through aerosolization, "will increase volatility and greatly increase air concentrations of flavoring substances."[43]

21.   The scientific community agrees vaping is harmful. Despite this, Defendant continues to advertise its Products as "safe" and "nutritional" and fails to warn consumers about the harmful effects of its Products.

22.   Plaintiff seeks injunctive relief against Defendant for false and misleading advertising in violation of Business and Professions Code Section 17200, *et seq.*, Business and Professions Code Section 17500, *et seq.*, and Civil Code Section 1750, *et seq*.

23.   Defendant made and continues to make these false and misleading statements in its labeling and advertising of the Products. Compliance with remedial statues like those underlying this lawsuit will benefit Plaintiff, the putative class, consumers, and the general public. Compliance is the primary litigation objective of this lawsuit.

## PARTIES

24.   Plaintiff Connor Hauer is an individual residing in Los Angeles, California. Plaintiff purchased the Nutriair *Immune* Product in California within the last four (4) years of the filing of this Complaint.  Specifically, Plaintiff purchased the Product in February 2019 on Defendant's official website, www.nutriair.com. When purchasing the Product, Plaintiff relied upon the advertising of the Product,

---

[43] The Flavor and Extract Manufacturers Association of The United States (2012). *Respiratory Health And Safety In The Flavor Manufacturing Workplace: 2012 Update*. FEMA, Washington, 2012, p. 8.

C LARKSON L AW F IRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

including, Defendant's claim that its Product delivers "safe", inhalable nutrients. These advertising statements were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. Plaintiff would not have purchased the Product, if he had known that the advertising as described herein was false, misleading, and/or deceptive.

25.     NV Nutrition, LLC is a corporation headquartered in Clearwater, Florida. NV Nutrition, LLC maintains its principal place of business at 4700 140th Ave. N. Ste. 112, Clearwater, FL 33762.  NV Nutrition, LLC directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the United States and/or State of California.  NV Nutrition is the one of the owners, manufacturers, and distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive claims on the Product website.

26.     The true names and capacities, whether individual, corporate, associate, or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiff who therefore sue these individuals and/or entities by fictitious names.  Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and based thereon alleges that DOES 1 through 10 were authorized to do and did business in Los Angeles County.  Plaintiff is further informed and believe and based thereon allege that DOES 1 through 17 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and consequences hereinafter set forth below.

///

///

///

## JURISDICTION AND VENUE

27.    This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts.

28.    Plaintiff has standing to bring this action pursuant to the California Consumers Legal Remedies Act, Civil Code Section 1750, *et seq*.; California False Advertising Law, Business and Professions Code Section 17500*, et seq*.; and California Unfair Competition Law, Business and Professions Code Section 17200, *et seq*.

29.    Out-of-state participants can be brought before this Court pursuant to the provisions of California Code of Civil Procedure Section 395.5.

30.    Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between in and California.

31.    Venue is proper in this Court because Defendant conducts business in this District, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, distribution and sale of the Product throughout this District's retail outlets, we well as distribution of print media and internet advertisements.

## CLASS ALLEGATIONS

32.    Plaintiff bring this action each on their own behalf and each on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the United States and/or State of California for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present.

33.    Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Products."

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

34.    The Class is so numerous that their individual joinder herein is impracticable. On information and belief, the Class numbers in the hundreds of thousands or more throughout the United States and/or State of California. The Class is sufficiently numerous because hundreds of thousands of units of the Products have been sold in the United States and/or California during the time period of four years prior to the filing of the complaint through the present.

35.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact common to the Class predominate over questions which may affect individual Class members.  Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

b.    Whether Defendant used deceptive representations in connection with the sale of the Product in violation of Civil Code section 1750, *et seq.*;

c.    Whether Defendant represented the Product has characteristics or quantities that it does not have in violation of Civil Code section 1750, *et seq.*;

d.    Whether Defendant advertised the Product with intent not to sell it as advertised in violation of Civil Code section 1750, *et seq.*;

e.    Whether Defendant's labeling and advertising of the Products is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

f.    Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.    Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

h.    Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i.    Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

36.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

37.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations.  Plaintiff and the Class each purchased a unit of the Products under the false belief that the Products are "safe" inhalers and were not aware of the harmful effects.  Plaintiff and the Class would not have purchased the Products if they had known that the Products are not safe.

38.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

39.    The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

40.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

41.    Absent a class action, Defendant will likely retain the benefits of their wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of their ill-gotten gains.

## COUNT ONE

### Violation of California Consumers Legal Remedies Act,

### California Civil Code Section 1750, *et seq.*

### (By Plaintiff against all Defendants)

42.    Plaintiff repeats and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

43.    Plaintiff brings this cause of action pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the United States and/or State of California for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present. Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products."

44.    The Class consists of thousands of persons, the joinder of whom is impracticable.

45.    There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, including but not limited to those questions listed above.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

46.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

47.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result in the sale of the Product to the consuming public and violated and continue to violate the CLRA by (1) using deceptive representations in connection with the Products; (2) representing the Products have characteristics and quantities that they do not have; and (3) advertising and packaging the Products with intent not to sell them as advertised and packaged.

48.    Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the Products as having characteristics and quantities which they do not have, e.g., that the Products are "safe" and "nutritional" and not harmful. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class.  Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

49.    Defendant fraudulently deceived Plaintiff and the Class by advertising the Products with intent not to sell them as advertised, by misrepresenting that they are "safe" and "nutritional" when they are not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

50.    Defendant knew or should have known, through the exercise of reasonable care, that the Products' advertising was misleading.

51.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

52.    Defendant's Product advertising was a material factor in Plaintiff's and the Class's decisions to purchase the Products. Based on Defendant's Product

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

advertising, Plaintiff and the Class reasonably believed that they were getting a safe and nutritional Product than they actually received. Had they known the truth of the matter, Plaintiff and the Class would not have purchased the Products.

53.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for a product he never received. Plaintiff would not have purchased the Product had he known it was not safe.

54.    Defendant's false and misleading advertising claims should be enjoined due to the false, misleading, and/or deceptive nature of Defendant's advertising.  In addition, Defendant should be compelled to provide restitution and damages to consumers who paid for the Product they never received due to Defendant's representation that it was safe and nutritional when it was not.

55.    By letter dated February 22, 2019, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782(a).

## COUNT TWO
### Violation of California Unfair Competition Law,
### Business & Professions Code Section 17200, *et seq.*
### (By Plaintiff against all Defendants)

56.    Plaintiff repeats and realleges the allegations set forth above, and incorporate the same as if set forth herein at length.

57.    Plaintiff brings this cause of action pursuant to Business and Professions Code section 17200, *et seq*., each on his own behalf and each on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the United States and/or State of California for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present. Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLASS ACTION COMPLAINT

from Defendant in connection with that individual's use or endorsement of the Products."

58.    In the advertising of the Products, Defendant makes false and misleading statements regarding the benefits of the Products, as alleged in the preceding paragraphs.

59.    Defendant's advertising claims about the Products, as alleged in the preceding paragraphs, are false, deceptive, misleading and unreasonable.

60.    Defendant is aware that the claims that they make about the Products are false, deceptive, misleading and unreasonable.

61.    As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitutes an unfair and fraudulent business practice within the meaning of California Business & Professions Code section 17200.

62.    In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business & Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code section 17500.

63.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

64.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

65.    Pursuant to Business & Professions Code sections 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of advertising the

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

sale and use of the Products in the manner alleged herein. Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's failure to disclose the existence and significance of said misrepresentations.

66.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff and the Class purchased the Products in reliance of the claims by Defendant that the Products were capable of the representations made in Defendant's advertising. Plaintiff and the Class would not have purchased the Products if they had known that the claims and advertising as described herein were false.

## COUNT THREE
### Violation of California False Advertising Law,
### Business & Professions Code Section 17500, *et seq.*
### (By Plaintiff against all Defendants)

67.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

68.    Plaintiff brings this cause of action pursuant to Business and Professions Code section 17500, *et seq.*, each on his own behalf and each on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the United States and/or State of California for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present. Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products."

69.    California's False Advertising Law, California Business and Professions Code section 17500, *et seq.*, makes it "unlawful for any person to make or

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

70.    Defendant knowingly disseminated misleading claims that the Products are "safe" as a means to mislead the public for financial gain.

71.    Defendant controlled the labeling, packaging, production and advertising of the Products. It knew or should have known, through the exercise of reasonable care that its representations about the benefits of the Products was untrue, deceptive and misleading.

72.    Reasonable consumers base their online purchasing decisions on the net impression of a product's official website. Consumers generally do not conduct their own research to clarify the claims on the product website or for any other reason. Instead, the reasonable consumer chooses a product because the manufacturer's website claims led them to believe the product, in this case, vaping pens, are "safe" nutritional supplements.

73.    Defendant's action of prominently displaying false, deceptive, and misleading claims about the purported benefits of the Products on its official website is likely to deceive the reasonable consumer.

74.    Defendant's actions in violation of Section 17500 were false and misleading such that the reasonable consumer is and was likely to be deceived.

75.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff and the Class purchased the Products in reliance upon the claims by Defendant that the Products are "safe" as represented by Defendant's website description and advertising. Plaintiff would not

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

have purchased the Products if he had known that the claims and advertising as described herein were false and misleading.

76.   As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitutes an unfair, unlawful, and fraudulent business practice within the meaning of California Business & Professions Code section 17500.

77.   In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business & Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code section 17500.

78.   Pursuant to Business & Professions Code sections 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the Products. Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

## COUNT FOUR

### Breach of Express Warranty

### (By Plaintiff against all Defendants)

79.   Plaintiff repeats and realleges the all allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

80.   Defendant expressly warranted on its website that its devices are "safe, inhalable nutrients." Defendant's claims constitute an affirmation of fact, promise,

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

and/or description of the goods, the Products, that became part of the basis of the bargain and created an express warranty that the Products would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

81.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

82.    Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the advertisement.

83.    Defendant's express warranty that the Products provided are "safe" vaping devices was breached because the Products are not safe and can have several harmful effects as discussed *supra*.

84.    Defendant therefore breached the terms of its express warranty with Plaintiff and the Class by not providing Products that conform to the advertising claim that the Products are "safe" devices.

85.    As a result of Defendant's breach of express warranty, Plaintiff and the Class have been damaged in the amount to be determined at trial.

## COUNT FIVE

### Unjust Enrichment

### (By Plaintiff against all Defendants)

86.    Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

87.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Product to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive.

88.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

///

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

89.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

90.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

91.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

92.     The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

93.     Plaintiff and members of the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

A. An order enjoining Defendant from advertising the Products as alleged herein;

B. Damages against Defendant in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum rate allowable by law on any amounts awarded;

C. Restitution and/or disgorgement in an amount to be determined at trial;

D. Punitive damages;

E. Reasonable attorneys' fees;

F. Costs of this suit; and

G. Such other and further relief as the Court may deem necessary or appropriate.

### **JURY TRIAL DEMANDED**

Plaintiff demands a jury trial on all triable issues.

DATED: November 5, 2019                    **CLARKSON LAW FIRM, P.C.**


                                           /s/ Ryan J. Clarkson
                                           Ryan J. Clarkson, Esq.
                                           Matthew T. Theriault, Esq.
                                           Bahar Sodaify, Esq.

                                           Attorneys for Plaintiff and the
                                           Plaintiff Class

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLASS ACTION COMPLAINT